UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

**No.  3:18-cv-5931**

DANIEL MITCHELL, ROBIN BALL, LUKE RETTMER, ARMEN TOOLOEE, NATHANIEL CASEY, MATTHEW WALD, SECOND AMENDMENT FOUNDATION, AND NATIONAL RIFLE ASSOCIATION,

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff,

vs.

STATE OF WASHINGTON, AND ROBERT FERGUSON, IN HIS OFFICIAL CAPACITY AS THE ATTORNEY GENERAL OF THE STATE OF WASHINGTON,

Defendant.

## I.      INTRODUCTION

1.     This case is a federal civil rights action brought pursuant to 42 U.S.C. § 1983 seeking declaratory judgment and injunctive relief.

2.     This suit challenges the constitutionality of certain bans enacted through Washington State Initiative No. 1639 ("I-1639"), enacted by voters on November 6, 2018. A copy of I-1639 is attached hereto as Exhibit A.

Complaint (No. 3:18-cv-5931)
Page 1 of 11

**ALBRECHT LAW** PLLC
421 W. Riverside Ave, Suite 614
Spokane, WA 99201  (509) 495-1246

3. I-1639 drastically rewrites statutes governing purchase, sale, and ownership of firearms in common use in the state of Washington. It thereby infringes the Plaintiffs' right under the Commerce Clause, U.S. Const. Art. I § 8 Cl. 3, and the Second and Fourteenth Amendments to the United States Constitution.

4. Section 13 of I-1639 becomes effective on January 1, 2019; the balance of I-1639 becomes effective on July 1, 2019.

## II.   JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the suit arises under Art. I § 8 Cl. 3 and the Second and Fourteenth Amendments to the United States Constitution.

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1343 because the suit arises under the Civil Rights Act of 1871, 42 U.S.C. § 1983, to redress the deprivation, under color of state law, of rights, privileges, and immunities secured to Plaintiffs by U.S. Const. Art. I § 8 Cl. 3 and the Second and Fourteenth Amendments to the U.S. Constitution.

7. Under 28 U.S.C. § 1367 this Court has supplemental jurisdiction over claims stated in this Complaint that arise under state law but are so related to the federal claims as to form part of the same case or controversy.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 and LCR 3(e), and intra-district assignment to the Tacoma Division is proper because a substantial part of the events and omissions that give rise to Plaintiffs' claims arose in this judicial district and division, and Defendants do business and operate in this judicial district and division.

ALBRECHT LAW PLLC
421 W. Riverside Ave, Suite 614
Spokane, WA 99201  (509) 495-1246

### III.      PARTIES

9.    Plaintiff Daniel Mitchell is a federally licensed firearms dealer.

10.    Mitchell operates a business in Vancouver, Washington, which sells firearms to the public.

11.    Plaintiff Robin Ball is a federally licensed firearms dealer.

12.    Ball operates a business in Spokane, Washington, which sells firearms to the public.

13.    Plaintiffs Mitchell and Ball are hereafter identified together as the "Dealer Plaintiffs."

14.    Plaintiff Luke Rettmer is a resident of the state of Washington.

15.    Rettmer is 19 years old.

16.    Rettmer is a competitive shooter.

17.    Rettmer is a member of the US Long Range Rifle Under 21 team.

18.    Rettmer has competed at the United States High Powered Rifle competition.

19.    Rettmer has competed at the world championship High Powered Rifle competition.

20.    Rettmer expects to compete again in the future at the world championship High Powered Rifle competition.

21.    Plaintiff Nathaniel Casey is a citizen of the state of Washington and his permanent residence is in Spokane, Washington.

22.    Casey is 19 years old and is a student at Boise State University where he is studying mathematics and education. Mr. Casey has limited means and works two jobs in addition to attending college.



421 W. Riverside Ave, Suite 614
Spokane, WA 99201  (509) 495-1246

23.   Casey is in the army reserves where he has received training and is qualified by the U.S. Army on his fully automatic duty rifle as well as several other firearms.  The training he has already received exceeds anything required by I-1639.

24.   Casey owns a semi-automatic .223 caliber Colt M4 and intends to purchase a similar rifle in .22 long rifle caliber for less expensive target practice to help remain proficient with rifle target practice when not on duty.

25.   Casey also intends to purchase a higher caliber semi-automatic rifle suitable for lawful big game hunting in the future.

26.   Plaintiff Armen Tooloee is a resident of the state of Washington.

27.   Tooloee is 20 years old.

28.   Tooloee is a recreational shooter.

29.   Tooloee shoots at a rifle range with friends approximately once a month.

30.   Matthew Louis Wald is a resident of Washington State, age 19.

31.   Wald is a student at Seattle University, currently studying Nursing for his BSN. His permanent residence is in University Place, Washington.

32.   Wald is a recreational shooter and shoots at rifle ranges several times a year.

33.   Wald is the legal owner of a Ruger .22 semi-automatic rifle, and has hopes of purchasing a semi-automatic .223 rifle for recreational target practice in the future.

34.   Wald has extensive experience with semi-automatic rifles and is lawfully qualified to purchase and own such rifles but for the restrictions of I-1639.

35.   Plaintiffs Rettmer, Casey, Tooloee, and Wald are hereafter identified together as the "Young Adult Plaintiffs."

ALBRECHT LAW PLLC
421 W. Riverside Ave, Suite 614
Spokane, WA 99201  (509) 495-1246

36.    Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington.

37.    SAF has over 600,000 members and supporters nationwide, including thousands in the State of Washington.

38.    SAF offers education, research, publishing, and support for the constitutional right to own and possess firearms.

39.    SAF brings this action on behalf of itself and its members. Plaintiff National Rifle Association of America, Inc. ("NRA") is a nonprofit association incorporated under the laws of New York. Its principal place of business is 11250 Waples Mill Road, Fairfax, VA 22030.

40.    The NRA is the oldest civil rights organization in America and the Nation's foremost defender of Second Amendment rights.

41.    The NRA promotes the safe and responsible purchase, possession, and use of firearms by law-abiding adults for lawful purposes, such as self-defense, target practice, marksmanship competition, and hunting.

42.    The NRA is the leading provider of firearms marksmanship and safety training for civilians and law-enforcement officers.

43.    The NRA has a membership of almost six million persons, many thousands of whom reside throughout the state of Washington. Plaintiffs Second Amendment Foundation and National Rifle Association are hereafter identified together as the "Organizational Plaintiffs."

ALBRECHT LAW PLLC
421 W. Riverside Ave, Suite 614
Spokane, WA 99201  (509) 495-1246

44.    The State of Washington is a sovereign state of the United States of America and charged by law with the defense of the constitutionality of statutes of the State.

45.    Defendant Robert Ferguson is sued in his official capacity as the Attorney General of the State of Washington. In that capacity, he is the chief law enforcement official of the State of Washington and responsible for enforcing the challenged Act.

## IV.    ALLEGATIONS

### A.  Facts Regarding I-1639's Ban On Sales Of Rifles To Non-Residents

46.    I-1639 amends RCW 9.41.124, which reads in part:

> Residents of a state other than Washington may purchase rifles and shotguns, except those firearms defined as semiautomatic assault rifles, in Washington …

47.    The words "except those firearms defined as semiautomatic assault rifles" were added to the existing statute by I-1639.

48.    I-1639 includes the following definition:

> "Semiautomatic assault rifle" means any rifle which utilizes a portion of the energy of a firing cartridge to extract the fired cartridge case and chamber the next round, and which requires a separate pull of the trigger to fire each cartridge.

49.    Rifles that utilize a portion of the energy of a firing cartridge to extract the fired cartridge case and chamber the next round, and which require a separate pull of the trigger to fire each cartridge (hereinafter "semi-automatic rifles") are in common use in Washington and in the United States.

50.    Semi-automatic rifles are commonly owned and used for lawful purposes in Washington and in the United States.



421 W. Riverside Ave, Suite 614
Spokane, WA 99201  (509) 495-1246

51. Plaintiff Mitchell has previously sold semi-automatic rifles to residents of other states.

52. Plaintiff Mitchell profits from such sales.

53. Plaintiff Mitchell intends in the future, absent a statutory ban, to continue selling semi-automatic rifles to residents of other states.

54. Plaintiff Ball has in the past sold semi-automatic rifles to residents of other states.

55. Plaintiff Ball profits from such sales.

56. Plaintiff Ball intends in the future, absent a statutory ban, to continue selling semi-automatic rifles to residents of other states.

**B. Facts Regarding I-1639's Ban On Adult Purchase Of Certain Rifles**

57. I-1639 amends RCW 9.41.240 to add the following:

> A person under twenty-one years of age may not purchase a pistol or semiautomatic assault rifle, and except as otherwise provided in this chapter, no person may sell or transfer a semiautomatic assault rifle to a person under twenty-one years of age. .

58. Plaintiff Rettmer is not prohibited by any law from purchasing or owning a firearm except by virtue of his age.

59. Plaintiff Rettmer desires to purchase a semi-automatic rifle.

60. Plaintiff Casey is not prohibited by any law from purchasing or owning a firearm except by virtue of his age.

61. Plaintiff Tooloee is not prohibited by any law from purchasing or owning a firearm except by virtue of his age.

62. Plaintiff Tooloee desires to purchase a semi-automatic rifle.

63. Plaintiff Mitchell desires to sell semi-automatic rifles to non-prohibited purchasers.



64. Plaintiff Ball desires to sell semi-automatic rifles to non-prohibited purchasers.

## V.      CAUSES OF ACTION

65. The allegations of the previous paragraphs are incorporated as if fully set forth.

### A.  Count I: Declaratory Relief: Section 12's Ban on Sales of Rifles to Non-Residents Violates the Commerce Clause, Art. I § 8 cl. 3

66. The Dealer Plaintiffs seek a declaration from this Court that the ban enacted by I-1639 which forbids a licensed dealer from selling certain rifles to non-residents of the state impermissibly burdens interstate commerce in violation of the Commerce Clause of the United States Constitution, Art. I § 8 cl. 3.

67. The enacted ban on interstate sales of rifles is not carefully or narrowly tailored to minimize the infringement of Second Amendment rights

### B.  Count II: Declaratory Relief That Section 13 Unconstitutionally Impairs the Right to Purchase And Possess Rifles Guaranteed by the Second Amendment

68. The Young Adult Plaintiffs seek a declaration from this Court that Section 13 of I-1639, by preventing their purchase of certain rifles, impermissibly burdens their exercise of rights guaranteed by the Second Amendment to the United States Constitution

69. The Dealer Plaintiffs seek a declaration from this Court that Section 13 of I-1639, by preventing the sale to otherwise qualified adults under age 21 of certain rifles, impermissibly burdens their exercise of rights guaranteed by the Second Amendment to the United States Constitution.

70. The Organizational Plaintiffs, on their own behalf, and on behalf of their members, seek a declaration from this Court that Section 13 of I-1639, by preventing the purchase by

adults under age 21 of certain rifles, impermissibly burdens the exercise of rights guaranteed by the Second Amendment to the United States Constitution.

71.    No state interest justifies this infringement on the Young Adult Plaintiffs' Second Amendment rights.

72.    The enacted ban on sale of semi-automatic rifles to Young Adults is significantly broader than necessary to serve any possible alleged governmental interest.

**C.  Count III: Declaratory Relief That Section 13 Violates The Washington Constitution Guarantee Of The Right To Bear Arms**

73.    Plaintiffs seek a declaration from this Court that Section 13 of I-1639, by preventing the sale to otherwise qualified adults under age 21 of certain rifles, impermissibly burdens their exercise of rights guaranteed by the Article I Section 24 of the Washington Constitution.

74.    The Dealer Plaintiffs and Organizational Plaintiffs seek an order from this Court enjoining Washington State and anyone acting on its behalf or in concert with it from enforcing the ban on sales of certain rifles to otherwise qualified adult purchasers who reside outside the state of Washington.

75.    Plaintiffs seek an order from this Court enjoining Washington State and anyone acting on its behalf or in concert with it from enforcing the ban on sales of certain rifles to otherwise qualified adult purchasers under age 21.

**D.  Count IV: Violation of Civil Rights (42 U.S.C. § 1983)**

76.    Attorney General Robert Ferguson has stated his intention to enforce I-1639.  In doing so, Attorney General Robert Ferguson will be acting under color of state law.

ALBRECHT LAW PLLC
421 W. Riverside Ave, Suite 614
Spokane, WA 99201  (509) 495-1246

77.   Unless enjoined by this Court, the enforcement of I-1639 will deprive plaintiffs of civil rights guaranteed by the Second Amendment to the United States Constitution, as applied by the Fourteenth Amendment to the United States Constitution.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

78.   A declaration that the challenged portions of I-1639 are unconstitutional;

79.   An order enjoining the defendants, and anyone acting on their behalf or in concert with them, from enforcing I-1639 in its entirety unless the law is ruled severable, and in that case, as to those sections determined to be unconstitutional;

80.   Plaintiffs' costs and attorneys' fees; and

81.   Such other and further relief as the court shall deem just and appropriate.

DATED November 14, 2018.


By: s/ _____

Matthew C. Albrecht WSBA No. 36801
ALBRECHT LAW PLLC
421 W. Riverside Ave, Suite 614
Spokane, WA 99201
Telephone: (509) 495-1246
Facsimile:  (509) 757-8255
Email: malbrecht@albrectlawfirm.com
Attorneys for Plaintiff

ALBRECHT LAW PLLC
421 W. Riverside Ave, Suite 614
Spokane, WA 99201  (509) 495-1246

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to parties of record through counsel (when applicable) as follows:

By email as per the stipulation for electronic service to:

DATED November 14, 2018.

By: s/_____
        Melanie Evans, Paralegal



421 W. Riverside Ave, Suite 614
Spokane, WA 99201  (509) 495-1246

# Initiative Measure No. 1639, filed May 2, 2018

AN ACT Relating to increasing public safety by implementing
firearm safety measures, including requiring enhanced background
checks, waiting periods, and increased age requirements for
semiautomatic assault rifles and secure gun storage for all
firearms; amending RCW 9.41.090, 9.41.092, 9.41.094, 9.41.097,
9.41.0975, 9.41.110, 9.41.113, 9.41.124, 9.41.240, 9.41.129, and
9.41.010; adding new sections to chapter 9.41 RCW; creating new
sections; prescribing penalties; and providing effective dates.

BE IT ENACTED BY THE PEOPLE OF THE STATE OF WASHINGTON:

NEW SECTION.  **Sec. 1.**  INTENT.  Gun violence is far too common
in Washington and the United States. In particular, shootings
involving the use of semiautomatic assault rifles have resulted in
hundreds of lives lost, devastating injuries, and lasting
psychological impacts on survivors, their families, and communities.
Semiautomatic assault rifles are specifically designed to kill
quickly and efficiently and have been used in some of the country's
deadliest mass shootings, including in Newtown, Connecticut; Las

1

Vegas, Nevada; and Parkland and Orlando, Florida, among others. Semiautomatic assault rifles have also been used in deadly shootings in Washington, including in Mukilteo and Tacoma.

The impacts of gun violence by assault weapons fall heavily on children and teenagers. According to one analysis, more than two hundred eight thousand students attending at least two hundred twelve schools have experienced a shooting on campus since the Columbine mass shooting in 1999. Active shooter drills are normal for a generation of American schoolchildren, instilling at a young age the sad and unnecessary realization that a mass shooting can happen in any community, in any school, at any time.

Enough is enough. The people find and declare that it is crucial and urgent to pass laws to increase public safety and reduce gun violence.

Implementing an enhanced background check system for semiautomatic assault rifles that is as strong as the one required to purchase a handgun and requiring safety training and a waiting period will help ensure that we keep these weapons out of dangerous hands. Further, federal law prohibits the sale of pistols to individuals under the age of twenty-one and at least a dozen states further restrict the ownership or possession of firearms by individuals under the age of twenty-one. This makes sense, as studies show that eighteen to twenty year olds commit a disproportionate number of firearm homicides in the United States and research indicates that the brain does not fully mature until a later age. Raising the minimum age to purchase semiautomatic assault rifles to twenty-one is a commonsense step the people wish to take to increase public safety.

Finally, firearms taken from the home by children or other persons prohibited from possessing firearms have been at the heart of several tragic gun violence incidents. One study shows that over eighty-five percent of school shooters obtained the firearm at their home or from a friend or relative. Another study found that more than seventy-five percent of firearms used in youth suicide attempts

and unintentional injuries were stored in the residence of the victim, a relative, or a friend. Secure gun storage requirements for all firearms will increase public safety by helping ensure that children and other prohibited persons do not inappropriately gain access to firearms, and notice requirements will make the potential dangers of firearms clear to purchasers.

Therefore, to increase public safety for all Washingtonians, in particular our children, this measure would, among other things: Create an enhanced background check system applicable to semiautomatic assault rifles similar to what is required for handguns, require that individuals complete a firearm safety training course and be at least twenty-one years of age to purchase or possess such weapons, enact a waiting period for the purchase of such weapons, and establish standards for the responsible storage of all firearms.

NEW SECTION.  **Sec. 2.**  SHORT TITLE.  This act may be known and cited as the public safety and semiautomatic assault rifle act.

**Sec. 3.**  ENHANCED BACKGROUND CHECKS.  RCW 9.41.090 and 2018 c 201 s 6003 are each amended to read as follows:

(1) In addition to the other requirements of this chapter, no dealer may deliver a pistol to the purchaser thereof until:

(a) The purchaser produces a valid concealed pistol license and the dealer has recorded the purchaser's name, license number, and issuing agency, such record to be made in triplicate and processed as provided in subsection ((~~(5)~~)) (6) of this section. For purposes of this subsection (1)(a), a "valid concealed pistol license" does not include a temporary emergency license, and does not include any license issued before July 1, 1996, unless the issuing agency conducted a records search for disqualifying crimes under RCW 9.41.070 at the time of issuance;

(b) The dealer is notified in writing by (i) the chief of police or the sheriff of the jurisdiction in which the purchaser resides

that the purchaser is eligible to possess a pistol under RCW
9.41.040 and that the application to purchase is approved by the
chief of police or sheriff; or (ii) the state that the purchaser is
eligible to possess a firearm under RCW 9.41.040, as provided in
subsection (3)(b) of this section; or

(c) The requirements or time periods in RCW 9.41.092 have been
satisfied.

(2) In addition to the other requirements of this chapter, no
dealer may deliver a semiautomatic assault rifle to the purchaser
thereof until:

(a) The purchaser provides proof that he or she has completed a
recognized firearm safety training program within the last five
years that, at a minimum, includes instruction on:

(i) Basic firearms safety rules;

(ii) Firearms and children, including secure gun storage and
talking to children about gun safety;

(iii) Firearms and suicide prevention;

(iv) Secure gun storage to prevent unauthorized access and use;

(v) Safe handling of firearms; and

(vi) State and federal firearms laws, including prohibited
firearms transfers.

The training must be sponsored by a federal, state, county, or
municipal law enforcement agency, a college or university, a
nationally recognized organization that customarily offers firearms
training, or a firearms training school with instructors certified
by a nationally recognized organization that customarily offers
firearms training. The proof of training shall be in the form of a
certification that states under the penalty of perjury the training
included the minimum requirements; and

(b) The dealer is notified in writing by (i) the chief of police
or the sheriff of the jurisdiction in which the purchaser resides
that the purchaser is eligible to possess a firearm under
RCW 9.41.040 and that the application to purchase is approved by the
chief of police or sheriff; or (ii) the state that the purchaser is

4

eligible to possess a firearm under RCW 9.41.040, as provided in subsection (3)(b) of this section; or

(c) The requirements or time periods in RCW 9.41.092 have been satisfied.

(3)(a) Except as provided in (b) of this subsection, in determining whether the purchaser meets the requirements of RCW 9.41.040, the chief of police or sheriff, or the designee of either, shall check with the national crime information center, including the national instant criminal background check system, provided for by the Brady Handgun Violence Prevention Act (18 U.S.C. Sec. 921 et seq.), the Washington state patrol electronic database, the health care authority electronic database, and with other agencies or resources as appropriate, to determine whether the applicant is ineligible under RCW 9.41.040 to possess a firearm.

(b) The state, through the legislature or initiative process, may enact a statewide firearms background check system equivalent to, or more comprehensive than, the check required by (a) of this subsection to determine that a purchaser is eligible to possess a firearm under RCW 9.41.040. Once ((the)) a state system is established, a dealer shall use the state system and national instant criminal background check system, provided for by the Brady Handgun Violence Prevention Act (18 U.S.C. Sec. 921 et seq.), to make criminal background checks of applicants to purchase firearms. ((However, a chief of police or sheriff, or a designee of either, shall continue to check the health care authority's electronic database and with other agencies or resources as appropriate, to determine whether applicants are ineligible under RCW 9.41.040 to possess a firearm.))

(((3))) (4) In any case under this section where the applicant has an outstanding warrant for his or her arrest from any court of competent jurisdiction for a felony or misdemeanor, the dealer shall hold the delivery of the pistol or semiautomatic assault rifle until the warrant for arrest is served and satisfied by appropriate court appearance. The local jurisdiction for purposes of the sale, or the

state pursuant to subsection (3)(b) of this section, shall confirm
the existence of outstanding warrants within seventy-two hours after
notification of the application to purchase a pistol or
semiautomatic assault rifle is received. The local jurisdiction
shall also immediately confirm the satisfaction of the warrant on
request of the dealer so that the hold may be released if the
warrant was for an offense other than an offense making a person
ineligible under RCW 9.41.040 to possess a ((pistol)) firearm.

((~~(4)~~)) (5) In any case where the chief or sheriff of the local
jurisdiction, or the state pursuant to subsection (3)(b) of this
section, has reasonable grounds based on the following
circumstances: (a) Open criminal charges, (b) pending criminal
proceedings, (c) pending commitment proceedings, (d) an outstanding
warrant for an offense making a person ineligible under RCW 9.41.040
to possess a ((pistol)) firearm, or (e) an arrest for an offense
making a person ineligible under RCW 9.41.040 to possess a
((pistol)) firearm, if the records of disposition have not yet been
reported or entered sufficiently to determine eligibility to
purchase a ((pistol)) firearm, the local jurisdiction or the state
may hold the sale and delivery of the pistol or semiautomatic
assault rifle up to thirty days in order to confirm existing records
in this state or elsewhere. After thirty days, the hold will be
lifted unless an extension of the thirty days is approved by a local
district court, superior court, or municipal court for good cause
shown. A dealer shall be notified of each hold placed on the sale by
local law enforcement or the state and of any application to the
court for additional hold period to confirm records or confirm the
identity of the applicant.

((~~(5)~~)) (6)(a) At the time of applying for the purchase of a
pistol or semiautomatic assault rifle, the purchaser shall sign in
triplicate and deliver to the dealer an application containing:

(i) His or her full name, residential address, date and place of
birth, race, and gender;

(ii) The date and hour of the application;

6

(iii) The applicant's driver's license number or state
identification card number;

(iv) A description of the pistol or semiautomatic assault rifle
including the make, model, caliber and manufacturer's number if
available at the time of applying for the purchase of a pistol or
semiautomatic assault rifle. If the manufacturer's number is not
available at the time of applying for the purchase of a pistol or
semiautomatic assault rifle, the application may be processed, but
delivery of the pistol or semiautomatic assault rifle to the
purchaser may not occur unless the manufacturer's number is recorded
on the application by the dealer and transmitted to the chief of
police of the municipality or the sheriff of the county in which the
purchaser resides, or the state pursuant to subsection (3)(b) of
this section; ((and))

(v) A statement that the purchaser is eligible to purchase and
possess a ((pistol)) firearm under ((RCW 9.41.040)) state and
federal law; and

(vi) If purchasing a semiautomatic assault rifle, a statement by
the applicant under penalty of perjury that the applicant has
completed a recognized firearm safety training program within the
last five years, as required by subsection (2) of this section.

(b) The application shall contain ((a)) two warnings
substantially stated as follows:

(i) CAUTION: Although state and local laws do not differ,
federal law and state law on the possession of firearms differ. If
you are prohibited by federal law from possessing a firearm, you may
be prosecuted in federal court. State permission to purchase a
firearm is not a defense to a federal prosecution; and

(ii) CAUTION: The presence of a firearm in the home has been
associated with an increased risk of death to self and others,
including an increased risk of suicide, death during domestic
violence incidents, and unintentional deaths to children and others.

The purchaser shall be given a copy of the department of fish and wildlife pamphlet on the legal limits of the use of firearms((,)) and firearms safety((, and the fact that local laws and ordinances on firearms are preempted by state law and must be consistent with state law)).

(c) The dealer shall, by the end of the business day, sign and attach his or her address and deliver a copy of the application and such other documentation as required under subsections (1) and (2) of this section to the chief of police of the municipality or the sheriff of the county of which the purchaser is a resident, or the state pursuant to subsection (3)(b) of this section. The triplicate shall be retained by the dealer for six years. The dealer shall deliver the pistol or semiautomatic assault rifle to the purchaser following the period of time specified in this chapter unless the dealer is notified of an investigative hold under subsection ((<del>(4)</del>)) (5) of this section in writing by the chief of police of the municipality ((<del>or</del>)), the sheriff of the county, or the state, whichever is applicable, ((<del>denying</del>)) or of the denial of the purchaser's application to purchase and the grounds thereof. The application shall not be denied unless the purchaser is not eligible to purchase or possess ((<del>a pistol</del>)) the firearm under ((<del>RCW 9.41.040</del>)) state or ((<del>9.41.045, or</del>)) federal law.

(d) The chief of police of the municipality or the sheriff of the county, or the state pursuant to subsection (3)(b) of this section, shall retain or destroy applications to purchase a pistol or semiautomatic assault rifle in accordance with the requirements of 18 U.S.C. Sec. 922.

((<del>(6)</del>)) (7)(a) To help offset the administrative costs of implementing this section as it relates to new requirements for semiautomatic assault rifles, the department of licensing may require the dealer to charge each semiautomatic assault rifle purchaser or transferee a fee not to exceed twenty-five dollars, except that the fee may be adjusted at the beginning of each biennium to levels not to exceed the percentage increase in the

8

consumer price index for all urban consumers, CPI-W, or a successor underline

index, for the previous biennium as calculated by the United States

department of labor.

(b) The fee under (a) of this subsection shall be no more than

is necessary to fund the following:

(i) The state for the cost of meeting its obligations under this

section;

(ii) The health care authority, mental health institutions, and

other health care facilities for state-mandated costs resulting from

the reporting requirements imposed by RCW 9.41.097(1); and

(iii) Local law enforcement agencies for state-mandated local

costs resulting from the requirements set forth under RCW 9.41.090

and this section.

(8) A person who knowingly makes a false statement regarding

identity or eligibility requirements on the application to purchase

a ((pistol)) firearm is guilty of false swearing under RCW

9A.72.040.

((<del>(7)</del>)) (9) This section does not apply to sales to licensed

dealers for resale or to the sale of antique firearms.


**Sec. 4.**   WAITING PERIOD. RCW 9.41.092 and 2018 c 145 s 4 are

each amended to read as follows:

(1) Except as otherwise provided in this chapter and except for

semiautomatic assault rifles under subsection (2) of this section, a

licensed dealer may not deliver any firearm to a purchaser or

transferee until the earlier of:

((<del>(1)</del>)) (a) The results of all required background checks are

known and the purchaser or transferee ((<del>(a)</del>)) (i) is not prohibited

from owning or possessing a firearm under federal or state law and

((<del>(b)</del>)) (ii) does not have a voluntary waiver of firearm rights

currently in effect; or

((<del>(2)</del>)) (b) Ten business days have elapsed from the date the

licensed dealer requested the background check. However, for sales

and transfers of pistols if the purchaser or transferee does not

9

have a valid permanent Washington driver's license or state
identification card or has not been a resident of the state for the
previous consecutive ninety days, then the time period in this
subsection shall be extended from ten business days to sixty days.

(2) Except as otherwise provided in this chapter, a licensed
dealer may not deliver a semiautomatic assault rifle to a purchaser
or transferee until ten business days have elapsed from the date of
the purchase application or, in the case of a transfer, ten business
days have elapsed from the date a background check is initiated.

NEW SECTION.  **Sec. 5.**  SECURE GUN STORAGE. A new section is
added to chapter 9.41 RCW to read as follows:

(1) A person who stores or leaves a firearm in a location where
the person knows, or reasonably should know, that a prohibited
person may gain access to the firearm:

(a) Is guilty of community endangerment due to unsafe storage of
a firearm in the first degree if a prohibited person obtains access
and possession of the firearm and causes personal injury or death
with the firearm; or

(b) Is guilty of community endangerment due to unsafe storage of
a firearm in the second degree if a prohibited person obtains access
and possession of the firearm and:

(i) Causes the firearm to discharge;

(ii) Carries, exhibits, or displays the firearm in a public
place in a manner that either manifests an intent to intimidate
another or that warrants alarm for the safety of other persons; or

(iii) Uses the firearm in the commission of a crime.

(2)(a) Community endangerment due to unsafe storage of a firearm
in the first degree is a class C felony punishable according to
chapter 9A.20 RCW.

(b) Community endangerment due to unsafe storage of a firearm in
the second degree is a gross misdemeanor punishable according to
chapter 9A.20 RCW.

(3) Subsection (1) of this section does not apply if:

(a) The firearm was in secure gun storage, or secured with a trigger lock or similar device that is designed to prevent the unauthorized use or discharge of the firearm;

(b) In the case of a person who is a prohibited person on the basis of the person's age, access to the firearm is with the lawful permission of the prohibited person's parent or guardian and supervised by an adult, or is in accordance with RCW 9.41.042;

(c) The prohibited person obtains, or obtains and discharges, the firearm in a lawful act of self-defense; or

(d) The prohibited person's access to the firearm was obtained as a result of an unlawful entry, provided that the unauthorized access or theft of the firearm is reported to a local law enforcement agency in the jurisdiction in which the unauthorized access or theft occurred within five days of the time the victim of the unlawful entry knew or reasonably should have known that the firearm had been taken.

(4) If a death or serious injury occurs as a result of an alleged violation of subsection (1)(a) of this section, the prosecuting attorney may decline to prosecute, even though technically sufficient evidence to prosecute exists, in situations where prosecution would serve no public purpose or would defeat the purpose of the law in question.

(5) For the purposes of this section, "prohibited person" means a person who is prohibited from possessing a firearm under state or federal law.

(6) Nothing in this section mandates how or where a firearm must be stored.

NEW SECTION.  **Sec. 6.**  AVAILABILITY OF SECURE GUN STORAGE.  A new section is added to chapter 9.41 RCW to read as follows:

(1) When selling or transferring any firearm, every dealer shall offer to sell or give the purchaser or transferee a secure gun storage device, or a trigger lock or similar device that is designed to prevent the unauthorized use or discharge of the firearm.

(2) Every store, shop, or sales outlet where firearms are sold, that is registered as a dealer in firearms with the department of licensing, shall conspicuously post, in a prominent location so that all patrons may take notice, the following warning sign, to be provided by the department of licensing, in block letters at least one inch in height:

WARNING: YOU MAY FACE CRIMINAL PROSECUTION IF YOU STORE OR LEAVE AN UNSECURED FIREARM WHERE A PERSON WHO IS PROHIBITED FROM POSSESSING FIREARMS CAN AND DOES OBTAIN POSSESSION.

(3) Every store, shop, or sales outlet where firearms are sold that is registered as a dealer in firearms with the department of licensing, upon the sale or transfer of a firearm, shall deliver a written warning to the purchaser or transferee that states, in block letters not less than one-fourth inch in height:

WARNING: YOU MAY FACE CRIMINAL PROSECUTION IF YOU STORE OR LEAVE AN UNSECURED FIREARM WHERE A PERSON WHO IS PROHIBITED FROM POSSESSING FIREARMS CAN AND DOES OBTAIN POSSESSION.

(4) Every person who violates this section is guilty of a class 1 civil infraction under chapter 7.80 RCW and may be fined up to two hundred fifty dollars. However, no such fines may be levied until thirty days have expired from the time warning signs required under subsection (2) of this section are distributed by the department of licensing.

**Sec. 7.**  RCW 9.41.094 and 2018 c 201 s 6004 are each amended to read as follows:

A signed application to purchase a pistol or semiautomatic assault rifle shall constitute a waiver of confidentiality and written request that the health care authority, mental health institutions, and other health care facilities release, to an inquiring court or law enforcement agency, information relevant to the applicant's eligibility to purchase a pistol or semiautomatic assault rifle to an inquiring court or law enforcement agency.

12

**Sec. 8.**  RCW 9.41.097 and 2018 c 201 s 6005 are each amended to read as follows:

(1) The health care authority, mental health institutions, and other health care facilities shall, upon request of a court, ((or)) law enforcement agency, or the state, supply such relevant information as is necessary to determine the eligibility of a person to possess a ((pistol)) firearm or to be issued a concealed pistol license under RCW 9.41.070 or to purchase a pistol or semiautomatic assault rifle under RCW 9.41.090.

(2) Mental health information received by: (a) The department of licensing pursuant to RCW 9.41.047 or 9.41.173; (b) an issuing authority pursuant to RCW 9.41.047 or 9.41.070; (c) a chief of police or sheriff pursuant to RCW 9.41.090 or 9.41.173; (d) a court or law enforcement agency pursuant to subsection (1) of this section; or (e) the state pursuant to RCW 9.41.090, shall not be disclosed except as provided in RCW 42.56.240(4).

**Sec. 9.**  RCW 9.41.0975 and 2009 c 216 s 7 are each amended to read as follows:

(1) The state, local governmental entities, any public or private agency, and the employees of any state or local governmental entity or public or private agency, acting in good faith, are immune from liability:

(a) For failure to prevent the sale or transfer of a firearm to a person whose receipt or possession of the firearm is unlawful;

(b) For preventing the sale or transfer of a firearm to a person who may lawfully receive or possess a firearm;

(c) For issuing a concealed pistol license or alien firearm license to a person ineligible for such a license;

(d) For failing to issue a concealed pistol license or alien firearm license to a person eligible for such a license;

(e) For revoking or failing to revoke an issued concealed pistol license or alien firearm license;

13

(f) For errors in preparing or transmitting information as part of determining a person's eligibility to receive or possess a firearm, or eligibility for a concealed pistol license or alien firearm license;

(g) For issuing a dealer's license to a person ineligible for such a license; or

(h) For failing to issue a dealer's license to a person eligible for such a license.

(2) An application may be made to a court of competent jurisdiction for a writ of mandamus:

(a) Directing an issuing agency to issue a concealed pistol license or alien firearm license wrongfully refused;

(b) Directing a law enforcement agency to approve an application to purchase a pistol or semiautomatic assault rifle wrongfully denied;

(c) Directing that erroneous information resulting either in the wrongful refusal to issue a concealed pistol license or alien firearm license or in the wrongful denial of a purchase application for a pistol or semiautomatic assault rifle be corrected; or

(d) Directing a law enforcement agency to approve a dealer's license wrongfully denied.

The application for the writ may be made in the county in which the application for a concealed pistol license or alien firearm license or to purchase a pistol or semiautomatic assault rifle was made, or in Thurston county, at the discretion of the petitioner. A court shall provide an expedited hearing for an application brought under this subsection (2) for a writ of mandamus. A person granted a writ of mandamus under this subsection (2) shall be awarded reasonable attorneys' fees and costs.

**Sec. 10.**  RCW 9.41.110 and 2009 c 479 s 10 are each amended to read as follows:

(1) No dealer may sell or otherwise transfer, or expose for sale or transfer, or have in his or her possession with intent to sell,

14

or otherwise transfer, any pistol without being licensed as provided in this section.

(2) No dealer may sell or otherwise transfer, or expose for sale or transfer, or have in his or her possession with intent to sell, or otherwise transfer, any firearm other than a pistol without being licensed as provided in this section.

(3) No dealer may sell or otherwise transfer, or expose for sale or transfer, or have in his or her possession with intent to sell, or otherwise transfer, any ammunition without being licensed as provided in this section.

(4) The duly constituted licensing authorities of any city, town, or political subdivision of this state shall grant licenses in forms prescribed by the director of licensing effective for not more than one year from the date of issue permitting the licensee to sell firearms within this state subject to the following conditions, for breach of any of which the license shall be forfeited and the licensee subject to punishment as provided in RCW 9.41.010 through 9.41.810. A licensing authority shall forward a copy of each license granted to the department of licensing. The department of licensing shall notify the department of revenue of the name and address of each dealer licensed under this section.

(5)(a) A licensing authority shall, within thirty days after the filing of an application of any person for a dealer's license, determine whether to grant the license. However, if the applicant does not have a valid permanent Washington driver's license or Washington state identification card, or has not been a resident of the state for the previous consecutive ninety days, the licensing authority shall have up to sixty days to determine whether to issue a license. No person shall qualify for a license under this section without first receiving a federal firearms license and undergoing fingerprinting and a background check. In addition, no person ineligible to possess a firearm under RCW 9.41.040 or ineligible for a concealed pistol license under RCW 9.41.070 shall qualify for a dealer's license.

(b) A dealer shall require every employee who may sell a firearm in the course of his or her employment to undergo fingerprinting and a background check. An employee must be eligible to possess a firearm, and must not have been convicted of a crime that would make the person ineligible for a concealed pistol license, before being permitted to sell a firearm. Every employee shall comply with requirements concerning purchase applications and restrictions on delivery of pistols or semiautomatic assault rifles that are applicable to dealers.

(6)(a) Except as otherwise provided in (b) of this subsection, the business shall be carried on only in the building designated in the license. For the purpose of this section, advertising firearms for sale shall not be considered the carrying on of business.

(b) A dealer may conduct business temporarily at a location other than the building designated in the license, if the temporary location is within Washington state and is the location of a gun show sponsored by a national, state, or local organization, or an affiliate of any such organization, devoted to the collection, competitive use, or other sporting use of firearms in the community. Nothing in this subsection (6)(b) authorizes a dealer to conduct business in or from a motorized or towed vehicle.

In conducting business temporarily at a location other than the building designated in the license, the dealer shall comply with all other requirements imposed on dealers by RCW 9.41.090, 9.41.100, and ((9.41.110)) this section. The license of a dealer who fails to comply with the requirements of RCW 9.41.080 and 9.41.090 and subsection (8) of this section while conducting business at a temporary location shall be revoked, and the dealer shall be permanently ineligible for a dealer's license.

(7) The license or a copy thereof, certified by the issuing authority, shall be displayed on the premises in the area where firearms are sold, or at the temporary location, where it can easily be read.

16

(8)(a) No pistol or semiautomatic assault rifle may be sold: (i) In violation of any provisions of RCW 9.41.010 through 9.41.810; nor (ii) may a pistol or semiautomatic assault rifle be sold under any circumstances unless the purchaser is personally known to the dealer or shall present clear evidence of his or her identity.

(b) A dealer who sells or delivers any firearm in violation of RCW 9.41.080 is guilty of a class C felony. In addition to any other penalty provided for by law, the dealer is subject to mandatory permanent revocation of his or her dealer's license and permanent ineligibility for a dealer's license.

(c) The license fee for pistols shall be one hundred twenty-five dollars. The license fee for firearms other than pistols shall be one hundred twenty-five dollars. The license fee for ammunition shall be one hundred twenty-five dollars. Any dealer who obtains any license under subsection (1), (2), or (3) of this section may also obtain the remaining licenses without payment of any fee. The fees received under this section shall be deposited in the state general fund.

(9)(a) A true record in triplicate shall be made of every pistol or semiautomatic assault rifle sold, in a book kept for the purpose, the form of which may be prescribed by the director of licensing and shall be personally signed by the purchaser and by the person effecting the sale, each in the presence of the other, and shall contain the date of sale, the caliber, make, model and manufacturer's number of the weapon, the name, address, occupation, and place of birth of the purchaser, and a statement signed by the purchaser that he or she is not ineligible under ((RCW 9.41.040)) state or federal law to possess a firearm.

(b) One copy shall within six hours be sent by certified mail to the chief of police of the municipality or the sheriff of the county of which the purchaser is a resident, or the state pursuant to RCW 9.41.090; the duplicate the dealer shall within seven days send to the director of licensing; the triplicate the dealer shall retain for six years.

(10) Subsections (2) through (9) of this section shall not apply to sales at wholesale.

(11) The dealer's licenses authorized to be issued by this section are general licenses covering all sales by the licensee within the effective period of the licenses. The department shall provide a single application form for dealer's licenses and a single license form which shall indicate the type or types of licenses granted.

(12) Except as provided in RCW 9.41.090, every city, town, and political subdivision of this state is prohibited from requiring the purchaser to secure a permit to purchase or from requiring the dealer to secure an individual permit for each sale.

**Sec. 11.**   RCW 9.41.113 and 2017 c 264 s 2 are each amended to read as follows:

(1) All firearm sales or transfers, in whole or part in this state including without limitation a sale or transfer where either the purchaser or seller or transferee or transferor is in Washington, shall be subject to background checks unless specifically exempted by state or federal law. The background check requirement applies to all sales or transfers including, but not limited to, sales and transfers through a licensed dealer, at gun shows, online, and between unlicensed persons.

(2) No person shall sell or transfer a firearm unless:

(a) The person is a licensed dealer;

(b) The purchaser or transferee is a licensed dealer; or

(c) The requirements of subsection (3) of this section are met.

(3) Where neither party to a prospective firearms transaction is a licensed dealer, the parties to the transaction shall complete the sale or transfer through a licensed dealer as follows:

(a) The seller or transferor shall deliver the firearm to a licensed dealer to process the sale or transfer as if it is selling or transferring the firearm from its inventory to the purchaser or transferee, except that the unlicensed seller or transferor may

18

remove the firearm from the business premises of the licensed dealer
while the background check is being conducted. If the seller or
transferor removes the firearm from the business premises of the
licensed dealer while the background check is being conducted, the
purchaser or transferee and the seller or transferor shall return to
the business premises of the licensed dealer and the seller or
transferor shall again deliver the firearm to the licensed dealer
prior to completing the sale or transfer.

(b) Except as provided in (a) of this subsection, the licensed
dealer shall comply with all requirements of federal and state law
that would apply if the licensed dealer were selling or transferring
the firearm from its inventory to the purchaser or transferee,
including but not limited to conducting a background check on the
prospective purchaser or transferee in accordance with federal and
state law requirements ((and)), fulfilling all federal and state
recordkeeping requirements, and complying with the specific
requirements and restrictions on semiautomatic assault rifles in
this act.

(c) The purchaser or transferee must complete, sign, and submit
all federal, state, and local forms necessary to process the
required background check to the licensed dealer conducting the
background check.

(d) If the results of the background check indicate that the
purchaser or transferee is ineligible to possess a firearm, then the
licensed dealer shall return the firearm to the seller or
transferor.

(e) The licensed dealer may charge a fee that reflects the fair
market value of the administrative costs and efforts incurred by the
licensed dealer for facilitating the sale or transfer of the
firearm.

(4) This section does not apply to:

(a) A transfer between immediate family members, which for this
subsection shall be limited to spouses, domestic partners, parents,
parents-in-law, children, siblings, siblings-in-law, grandparents,

19

grandchildren, nieces, nephews, first cousins, aunts, and uncles, that is a bona fide gift or loan;

(b) The sale or transfer of an antique firearm;

(c) A temporary transfer of possession of a firearm if such transfer is necessary to prevent imminent death or great bodily harm to the person to whom the firearm is transferred if:

(i) The temporary transfer only lasts as long as immediately necessary to prevent such imminent death or great bodily harm; and

(ii) The person to whom the firearm is transferred is not prohibited from possessing firearms under state or federal law;

(d) A temporary transfer of possession of a firearm if: (i) The transfer is intended to prevent suicide or self-inflicted great bodily harm; (ii) the transfer lasts only as long as reasonably necessary to prevent death or great bodily harm; and (iii) the firearm is not utilized by the transferee for any purpose for the duration of the temporary transfer;

(e) Any law enforcement or corrections agency and, to the extent the person is acting within the course and scope of his or her employment or official duties, any law enforcement or corrections officer, United States marshal, member of the armed forces of the United States or the national guard, or federal official;

(f) A federally licensed gunsmith who receives a firearm solely for the purposes of service or repair, or the return of the firearm to its owner by the federally licensed gunsmith;

(g) The temporary transfer of a firearm (i) between spouses or domestic partners; (ii) if the temporary transfer occurs, and the firearm is kept at all times, at an established shooting range authorized by the governing body of the jurisdiction in which such range is located; (iii) if the temporary transfer occurs and the transferee's possession of the firearm is exclusively at a lawful organized competition involving the use of a firearm, or while participating in or practicing for a performance by an organized group that uses firearms as a part of the performance; (iv) to a person who is under eighteen years of age for lawful hunting,

sporting, or educational purposes while under the direct supervision and control of a responsible adult who is not prohibited from possessing firearms; (v) under circumstances in which the transferee and the firearm remain in the presence of the transferor; or (vi) while hunting if the hunting is legal in all places where the person to whom the firearm is transferred possesses the firearm and the person to whom the firearm is transferred has completed all training and holds all licenses or permits required for such hunting, provided that any temporary transfer allowed by this subsection is permitted only if the person to whom the firearm is transferred is not prohibited from possessing firearms under state or federal law;

(h) A person who (i) acquired a firearm other than a pistol by operation of law upon the death of the former owner of the firearm or (ii) acquired a pistol by operation of law upon the death of the former owner of the pistol within the preceding sixty days. At the end of the sixty-day period, the person must either have lawfully transferred the pistol or must have contacted the department of licensing to notify the department that he or she has possession of the pistol and intends to retain possession of the pistol, in compliance with all federal and state laws; or

(i) A sale or transfer when the purchaser or transferee is a licensed collector and the firearm being sold or transferred is a curio or relic.

**Sec. 12.**  RCW 9.41.124 and 2015 c 1 s 7 are each amended to read as follows:

Residents of a state other than Washington may purchase rifles and shotguns, except those firearms defined as semiautomatic assault rifles, in Washington: PROVIDED, That such residents conform to the applicable provisions of the federal Gun Control Act of 1968, Title IV, Pub. L. 90-351 as administered by the United States secretary of the treasury: AND PROVIDED FURTHER, That such residents are eligible to purchase or possess such weapons in Washington and in the state in which such persons reside: AND PROVIDED FURTHER, That such

residents are subject to the procedures and background checks required by this chapter.

Sec. 13. RCW 9.41.240 and 1994 sp.s. c 7 s 423 are each amended to read as follows:

(1) A person under twenty-one years of age may not purchase a pistol or semiautomatic assault rifle, and except as otherwise provided in this chapter, no person may sell or transfer a semiautomatic assault rifle to a person under twenty-one years of age.

(2) Unless an exception under RCW 9.41.042, 9.41.050, or 9.41.060 applies, a person at least eighteen years of age, but less than twenty-one years of age, may possess a pistol only:

((<del>(1)</del>)) (a) In the person's place of abode;

((<del>(2)</del>)) (b) At the person's fixed place of business; or

((<del>(3)</del>)) (c) On real property under his or her control.

(3) Except in the places and situations identified in RCW 9.41.042 (1) through (9) and 9.41.060 (1) through (10), a person at least eighteen years of age, but less than twenty-one years of age, may possess a semiautomatic assault rifle only:

(a) In the person's place of abode;

(b) At the person's fixed place of business;

(c) On real property under his or her control; or

(d) For the specific purpose of (i) moving to a new place of abode; (ii) traveling between the person's place of abode and real property under his or her control; or (iii) selling or transferring the firearm in accordance with the requirements of this chapter; provided that in all of these situations the semiautomatic assault rifle is unloaded and either in secure gun storage or secured with a trigger lock or similar device that is designed to prevent the unauthorized use or discharge of the firearm.

Sec. 14. RCW 9.41.129 and 2005 c 274 s 203 are each amended to read as follows:

22

The department of licensing ((may)) shall keep copies or records of applications for concealed pistol licenses provided for in RCW 9.41.070, copies or records of applications for alien firearm licenses, copies or records of applications to purchase pistols or semiautomatic assault rifles provided for in RCW 9.41.090, and copies or records of pistol or semiautomatic assault rifle transfers provided for in RCW 9.41.110. The copies and records shall not be disclosed except as provided in RCW 42.56.240(4).

NEW SECTION.  **Sec. 15.**  A new section is added to chapter 9.41 RCW to read as follows:

(1) Within twelve months of the effective date of this section, the department of licensing shall, in conjunction with the Washington state patrol and other state and local law enforcement agencies as necessary, develop a cost-effective and efficient process to:

(a) Verify, on an annual or more frequent basis, that persons who acquired pistols or semiautomatic assault rifles pursuant to this chapter remain eligible to possess a firearm under state and federal law; and

(b) If such persons are determined to be ineligible for any reason, (i) notify and provide the relevant information to the chief of police or the sheriff of the jurisdiction in which the purchaser resides and (ii) take steps to ensure such persons are not illegally in possession of firearms.

(2) The department of licensing, where appropriate, may consult with individuals from the public and private sector or ask the individuals to establish a temporary advisory committee to accomplish the purposes in subsection (1) of this section. Members of such an advisory committee are not entitled to expense reimbursement.

**Sec. 16.**  RCW 9.41.010 and 2018 c 7 s 1 are each amended to read as follows:

23

Unless the context clearly requires otherwise, the definitions in this section apply throughout this chapter.

(1) "Antique firearm" means a firearm or replica of a firearm not designed or redesigned for using rim fire or conventional center fire ignition with fixed ammunition and manufactured in or before 1898, including any matchlock, flintlock, percussion cap, or similar type of ignition system and also any firearm using fixed ammunition manufactured in or before 1898, for which ammunition is no longer manufactured in the United States and is not readily available in the ordinary channels of commercial trade.

(2) "Barrel length" means the distance from the bolt face of a closed action down the length of the axis of the bore to the crown of the muzzle, or in the case of a barrel with attachments to the end of any legal device permanently attached to the end of the muzzle.

(3) "Bump-fire stock" means a butt stock designed to be attached to a semiautomatic firearm with the effect of increasing the rate of fire achievable with the semiautomatic firearm to that of a fully automatic firearm by using the energy from the recoil of the firearm to generate reciprocating action that facilitates repeated activation of the trigger.

(4) "Crime of violence" means:

(a) Any of the following felonies, as now existing or hereafter amended: Any felony defined under any law as a class A felony or an attempt to commit a class A felony, criminal solicitation of or criminal conspiracy to commit a class A felony, manslaughter in the first degree, manslaughter in the second degree, indecent liberties if committed by forcible compulsion, kidnapping in the second degree, arson in the second degree, assault in the second degree, assault of a child in the second degree, extortion in the first degree, burglary in the second degree, residential burglary, and robbery in the second degree;

24

(b) Any conviction for a felony offense in effect at any time prior to June 6, 1996, which is comparable to a felony classified as a crime of violence in (a) of this subsection; and

(c) Any federal or out-of-state conviction for an offense comparable to a felony classified as a crime of violence under (a) or (b) of this subsection.

(5) "Curio or relic" has the same meaning as provided in 27 C.F.R. Sec. 478.11.

(6) "Dealer" means a person engaged in the business of selling firearms at wholesale or retail who has, or is required to have, a federal firearms license under 18 U.S.C. Sec. 923(a). A person who does not have, and is not required to have, a federal firearms license under 18 U.S.C. Sec. 923(a), is not a dealer if that person makes only occasional sales, exchanges, or purchases of firearms for the enhancement of a personal collection or for a hobby, or sells all or part of his or her personal collection of firearms.

(7) "Family or household member" means "family" or "household member" as used in RCW 10.99.020.

(8) "Felony" means any felony offense under the laws of this state or any federal or out-of-state offense comparable to a felony offense under the laws of this state.

(9) "Felony firearm offender" means a person who has previously been convicted or found not guilty by reason of insanity in this state of any felony firearm offense. A person is not a felony firearm offender under this chapter if any and all qualifying offenses have been the subject of an expungement, pardon, annulment, certificate, or rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted or a pardon, annulment, or other equivalent procedure based on a finding of innocence.

(10) "Felony firearm offense" means:

(a) Any felony offense that is a violation of this chapter;

(b) A violation of RCW 9A.36.045;

(c) A violation of RCW 9A.56.300;

(d) A violation of RCW 9A.56.310;

(e) Any felony offense if the offender was armed with a firearm in the commission of the offense.

(11) "Firearm" means a weapon or device from which a projectile or projectiles may be fired by an explosive such as gunpowder. "Firearm" does not include a flare gun or other pyrotechnic visual distress signaling device, or a powder-actuated tool or other device designed solely to be used for construction purposes.

(12) "Gun" has the same meaning as firearm.

(13) "Law enforcement officer" includes a general authority Washington peace officer as defined in RCW 10.93.020, or a specially commissioned Washington peace officer as defined in RCW 10.93.020. "Law enforcement officer" also includes a limited authority Washington peace officer as defined in RCW 10.93.020 if such officer is duly authorized by his or her employer to carry a concealed pistol.

(14) "Lawful permanent resident" has the same meaning afforded a person "lawfully admitted for permanent residence" in 8 U.S.C. Sec. 1101(a)(20).

(15) "Licensed collector" means a person who is federally licensed under 18 U.S.C. Sec. 923(b).

(16) "Licensed dealer" means a person who is federally licensed under 18 U.S.C. Sec. 923(a).

(17) "Loaded" means:

(a) There is a cartridge in the chamber of the firearm;

(b) Cartridges are in a clip that is locked in place in the firearm;

(c) There is a cartridge in the cylinder of the firearm, if the firearm is a revolver;

(d) There is a cartridge in the tube or magazine that is inserted in the action; or

(e) There is a ball in the barrel and the firearm is capped or primed if the firearm is a muzzle loader.

(18) "Machine gun" means any firearm known as a machine gun, mechanical rifle, submachine gun, or any other mechanism or instrument not requiring that the trigger be pressed for each shot and having a reservoir clip, disc, drum, belt, or other separable mechanical device for storing, carrying, or supplying ammunition which can be loaded into the firearm, mechanism, or instrument, and fired therefrom at the rate of five or more shots per second.

(19) "Nonimmigrant alien" means a person defined as such in 8 U.S.C. Sec. 1101(a)(15).

(20) "Person" means any individual, corporation, company, association, firm, partnership, club, organization, society, joint stock company, or other legal entity.

(21) "Pistol" means any firearm with a barrel less than sixteen inches in length, or is designed to be held and fired by the use of a single hand.

(22) "Rifle" means a weapon designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned, made or remade, and intended to use the energy of the explosive in a fixed metallic cartridge to fire only a single projectile through a rifled bore for each single pull of the trigger.

(23) "Sale" and "sell" mean the actual approval of the delivery of a firearm in consideration of payment or promise of payment.

(24) "Secure gun storage" means:

(a) A locked box, gun safe, or other secure locked storage space that is designed to prevent unauthorized use or discharge of a firearm; and

(b) The act of keeping an unloaded firearm stored by such means.

(25) "Semiautomatic assault rifle" means any rifle which utilizes a portion of the energy of a firing cartridge to extract the fired cartridge case and chamber the next round, and which requires a separate pull of the trigger to fire each cartridge.

"Semiautomatic assault rifle" does not include antique firearms, any firearm that has been made permanently inoperable, or any

27

firearm that is manually operated by bolt, pump, lever, or slide action.

(26) "Serious offense" means any of the following felonies or a felony attempt to commit any of the following felonies, as now existing or hereafter amended:

(a) Any crime of violence;

(b) Any felony violation of the uniform controlled substances act, chapter 69.50 RCW, that is classified as a class B felony or that has a maximum term of imprisonment of at least ten years;

(c) Child molestation in the second degree;

(d) Incest when committed against a child under age fourteen;

(e) Indecent liberties;

(f) Leading organized crime;

(g) Promoting prostitution in the first degree;

(h) Rape in the third degree;

(i) Drive-by shooting;

(j) Sexual exploitation;

(k) Vehicular assault, when caused by the operation or driving of a vehicle by a person while under the influence of intoxicating liquor or any drug or by the operation or driving of a vehicle in a reckless manner;

(l) Vehicular homicide, when proximately caused by the driving of any vehicle by any person while under the influence of intoxicating liquor or any drug as defined by RCW 46.61.502, or by the operation of any vehicle in a reckless manner;

(m) Any other class B felony offense with a finding of sexual motivation, as "sexual motivation" is defined under RCW 9.94A.030;

(n) Any other felony with a deadly weapon verdict under RCW 9.94A.825;

(o) Any felony offense in effect at any time prior to June 6, 1996, that is comparable to a serious offense, or any federal or out-of-state conviction for an offense that under the laws of this state would be a felony classified as a serious offense; or

(p) Any felony conviction under RCW 9.41.115.

28

((~~(25)~~)) (27) "Short-barreled rifle" means a rifle having one or more barrels less than sixteen inches in length and any weapon made from a rifle by any means of modification if such modified weapon has an overall length of less than twenty-six inches.

((~~(26)~~)) (28) "Short-barreled shotgun" means a shotgun having one or more barrels less than eighteen inches in length and any weapon made from a shotgun by any means of modification if such modified weapon has an overall length of less than twenty-six inches.

((~~(27)~~)) (29) "Shotgun" means a weapon with one or more barrels, designed or redesigned, made or remade, and intended to be fired from the shoulder and designed or redesigned, made or remade, and intended to use the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shot or a single projectile for each single pull of the trigger.

((~~(28)~~)) (30) "Transfer" means the intended delivery of a firearm to another person without consideration of payment or promise of payment including, but not limited to, gifts and loans. "Transfer" does not include the delivery of a firearm owned or leased by an entity licensed or qualified to do business in the state of Washington to, or return of such a firearm by, any of that entity's employees or agents, defined to include volunteers participating in an honor guard, for lawful purposes in the ordinary course of business.

((~~(29)~~)) (31) "Unlicensed person" means any person who is not a licensed dealer under this chapter.

NEW SECTION.  **Sec. 17.**  This act takes effect July 1, 2019, except for section 13 of this act which takes effect January 1, 2019.

NEW SECTION.  **Sec. 18.**  The director of the department of licensing may take the necessary steps to ensure that this act is implemented on its effective date.

NEW SECTION.  **Sec. 19.**  If any provision of this act or its application to any person or circumstance is held invalid or preempted by federal law, the remainder of the act or the application of the provision to other persons or circumstances is not affected.

**--- END ---**